# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JEFF DAVIES and MANUELA DAVIES,**

      **Plaintiffs,**

-vs-                                                                                Case No. 6:10-cv-1622-Orl-31GJK

**ANDREA QUARANTILLO, former**
**acting director, United States Citizenship**
**and Immigration Services, and JOHN**
**AND JANE DOES, unidentified employees of United States**
**Citizenship and Immigration Services,**

      **Defendants.**

## ORDER

This matter comes before the Court on the Motion for Summary Judgment (Doc. 29) filed by the Defendant, Andrea Quarantillo ("Quarantillo"), the response in opposition (Doc. 32) filed by the Plaintiffs, Jeff and Manuela Davies, and the reply (Doc. 34) filed by Quarantillo.

**I.    Background**

The Plaintiffs, who are husband and wife, appear *pro se*. Manuela Davies is a United States citizen. Jeff Davies is a British national. The instant case grows out of the efforts of Jeff Davies to obtain permanent residence in the United States. Except where noted, the following facts are undisputed.

Jeff Davies relocated from the United Kingdom to the United States in 1987. In 1990, he met and married Kathryn Jones, an American citizen. Shortly after the marriage, Kathryn Jones

filed an I-130 petition[1] on behalf of Jeff Davies with the appropriate United States agency, which is now known as Citizenship and Immigration Services ("CIS").  At the same time, Jeff Davies filed an I-485 petition.[2]  Some months later, Jeff Davies's petition was approved and he was granted conditional permanent resident status.

In 1992, Jeff Davies and Kathryn Jones divorced.  In September of that year, CIS notified Jeff Davies that his residency status was being terminated due to the divorce.  He sought a waiver that would allow him to become a permanent resident again.  In late 1993, he married Manuela Davies.  In July 1994, Jeff Davies was notified that his request for a waiver had been denied.

Manuela Davies became an American citizen in 1999.  In 2000, Jeff Davies filed another I-485 petition, and Manuela Davies filed a new I-130 petition.  In 2001, Jeff Davies was notified by CIS that, according to the agency's records, his marriage to Kathryn Jones had been fraudulent and therefore his petition was unlikely to be approved.  Jeff Davies disputed the claim that his previous marriage had been fraudulent.  Over the next several years, he pressed CIS for copies of the documents or other evidence supporting that claim, but such evidence was not produced.

On May 1, 2006, Quarantillo signed a letter, addressed to Manuela Davies, notifying her that CIS was denying her I-130 petition.  On May 25, 2006, Quarantillo signed a "Decision of Petition for Alien Relative," formally denying Manuela Davies's petition.  On the same day, Quarantillo signed a notice to Jeff Davies, notifying him that because Manuela's I-130 petition had

---

[1] An I-130 petition is used by a citizen to establish his or her relationship with an alien relative who wishes to immigrate to the United States.

[2] An I-485 petition is used by an alien to request an adjustment of status to that of a permanent resident.

been denied, his I-485 petition was denied. In that same notice, Quarantillo advised Jeff Davies that "[a]ny previously authorized employment is hereby revoked".

In September 2006, the Plaintiffs in this case – again acting *pro se* – filed suit in this court. In that suit they sought, among other things, an order requiring that CIS approve Jeff Davies's I-130 petition. The case was dismissed in July 2007 on the grounds that 8 U.S.C. § 1252 stripped this Court of subject matter jurisdiction to review the denial of the I-130 petition. The Plaintiffs appealed. While that appeal was pending, an immigration judge dismissed the proceedings in which the immigration authorities were attempting to deport Jeff Davies. Upon that dismissal, Manuela Davies filed a new I-130 petition and Jeff Davies filed a new I-485 petition. On June 30, 2009, Jeff Davies was granted permanent residency. On April 5, 2010, the appellate court dismissed the appeal of this Court's order as moot.

On November 2, 2010, the Davies filed the instant suit, a *Bivens* action, seeking damages for the Defendants' alleged infringement of the Plaintiffs' Fifth Amendment rights.

## II. Legal Standards

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court established a direct cause of action under the Constitution of the United States against federal officials for the violation of federal constitutional rights. In *Bivens*, the Supreme Court held that a violation of the Fourth Amendment by a federal agent acting under color of his authority gives rise to a cause of action for damages, despite the absence of any federal statute creating liability. *Id*. at 389. Subsequently, the Supreme Court has held that *Bivens* applies to violations of the Due Process Clause of the Fifth Amendment. *See Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed. 2d 846 (1979).

Because of the similarity between the two causes of actions, federal courts generally apply Section 1983 law to *Bivens* cases. *Wilson v. Blankenship*, 163 F.3d 1284, 1288 (11th 1998).

**III.    Analysis**

The Defendants raise a number of arguments as to why they are entitled to summary judgment. However, the Court need only address one of them to resolve the instant motion. After reviewing the Amended Complaint and the Plaintiffs' response to the motion, it is clear that the instant action is barred by the statute of limitations.

A *Bivens* action is governed by the same statute of limitations that would govern a Section 1983 action in that court. *Kelly v. Serna*, 87 F.3d 1235, 1238 (11th 1996). The United States Supreme Court has directed that the state limitation period applicable to personal injury actions should be applied to all actions brought pursuant to Section 1983. *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), *superceded by statute as recognized in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382, 124 S.Ct. 1836, 1845, 158 L.Ed.2d 645 (2004). The Supreme Court has also directed that, where state law provides for multiple statutes of limitations for personal injury actions, courts considering Section 1983 claims should borrow the general or residual statute for personal injury actions. *Owens v. Okure*, 488 U.S. 235, 249-50, 109 S.Ct. 573, 582, 102 L.Ed.2d 594 (1989). In Florida, which has multiple statutes of limitations for personal injury actions, the residual limitations period is four years. *See Stevens v. McKillop*, 198 Fed.Appx. 816, 818 n.2 (2006) *and see* Fla. Stat. § 95.11(3)(p) (2011).

The only actions that are identified as having been taken by Defendant Quarantillo occurred in May 2006, when she signed the letters notifying the Plaintiffs that their petitions had

been denied and, in the case of Jeff Davies, that his employment authorization had been revoked.[3] This matter was filed in November 2010, more than four years later. As such, it is barred by Florida's four-year residual limitations period for personal injury actions.

The Plaintiffs argue that the denials were not final until January 12, 2007, when CIS issued a second Decision on Petition for Alien Relative to Manuela Davies.[4] Regardless of the finality of the May 2006 Decision on Petition for Alien Relative, however, it is undisputed that it took effect immediately. Accordingly, any deprivation of life, liberty or property in violation of the Fifth Amendment occurred in May 2006, not January 2007.

The Plaintiffs also argue that the statute of limitations should have been tolled while they appealed to the Board of Immigration Appeals ("BIA"). The Plaintiffs argue that such an appeal is required by 8 CFR § 204.2(a)(C)(iii)(E). The Court finds no such regulation. Presumably, the Plaintiffs intended to cite to 8 CFR § 204.2(a)(iii)(E), which provides that "[t]he decision of the Board of Immigration Appeals concerning the denial of a relative visa petition because the petitioner failed to establish eligibility for the bona fide marriage exemption contained in this part will constitute the single level of appellate review established by statute." Assuming this to be the case, the Plaintiffs' argument is unavailing. The BIA lacks jurisdiction to adjudicate purely

---

[3]The Plaintiffs have not identified any actions as having been taken by the so-called "John Doe" or "Jane Doe" defendants. Upon review of the Amended Complaint, however, the Court finds no actions taken after May 2006 that could be interpreted as having deprived either of the Defendants of life, liberty or property in violation of the Fifth Amendment.

[4]According to the Plaintiffs, the first Decision on Petition for Alien Relative, which was issued under Quarantillo's signature in May 2006, was defective in that it failed to notify Manuela Davies of her right to appeal. As a result, the Plaintiffs say, CIS was forced to issue a second such document to provide proper notice of the right to appeal.

constitutional issues, such as the Due Process claims raised herein by the Plaintiffs. *See Ravindran v. I.N.S.*, 976 F.2d 754, 763 (1st Cir. 1992). Accordingly, there was no reason to delay institution of this proceeding pending resolution of that one.

### IV. Conclusion

In consideration of the foregoing, it is hereby

**ORDERED AND ADJUDGED** that the Motion for Summary Judgment (Doc. 29) is **GRANTED** as set forth above. Any claims asserted against the John or Jane Doe defendants are **DISMISSED WITH PREJUDICE.** The Clerk is directed to enter judgment in favor of Defendant Andrea Quarantillo and against the Plaintiffs, and to close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on October 11, 2011.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party